UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSE C., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C23-5655-SKV <br><br> ORDER REVERSING THE COMMISSIONER'S DECISION |

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits (DIB). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff was born in 1966, has a high school education, and has worked as a stevedoring/marine terminal superintendent, a shipping and receiving supervisor, a packing operation manager, a warehouse manager, and as a general construction superintendent. AR 28, 122, 200, 52-63. Plaintiff was last gainfully employed in June 2020. AR 184, 49, 97.

This case has a somewhat lengthy history. Plaintiff filed a prior claim for DIB on September 7, 2016, after which an ALJ held a hearing and then found that Plaintiff was not disabled on December 31, 2018. AR 113-24. Thereafter, Plaintiff filed the instant DIB application on July 11, 2020, alleging disability as of June 28, 2020. AR 363-64. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. AR 128-76. A new ALJ conducted a hearing on Plaintiff's 2020 DIB claim in September 2021, and, on October 14, 2021, the ALJ issued a partially favorable decision. AR 36-93, 118-203. In his October 2021 decision, the ALJ found that based on "new material evidence showing increased severity of [Plaintiff's] physical impairments, as well as the existence of impairments not considered in the prior decision," and a change in the agency's rules for evaluating musculoskeletal impairments, Plaintiff had rebutted the presumption of ongoing non-disability under *Chavez v. Bowen,* 844 F.2d 691, 693 (9th Cir. 1988). AR 182. The ALJ subsequently found that Plaintiff became disabled on May 19, 2021, when his age category changed, but that he was not disabled from June 28, 2020, until May 19, 2021. AR 202.

On January 21, 2022, the Appeals Council affirmed in part the ALJ's October 2021 finding that Plaintiff became disabled as a result of advanced age. AR 213-14. However, the Appeals Council concluded that the ALJ erred in finding Plaintiff disabled as a result of age change in May 2021, because Plaintiff did not change age categories until August 19, 2021. AR 214. Accordingly, the Appeals Council concluded that Plaintiff was disabled beginning August 19, 2021 – not May 19, 2021. AR 214.

However, the Appeals Council also reversed and remanded the ALJ's October 2021 finding that Plaintiff was not disabled from June 2020, until the time when he changed age categories in 2021. AR 213-15. Specifically, the Appeals Council found that the ALJ failed to

ORDER REVERSING THE COMMISSIONER'S
DECISION - 2

adequately evaluate the medical opinion evidence and to resolve discrepancies between the medical opinion evidence and Plaintiff's assessed RFC. AR 213-14. On remand, the Appeals Council ordered the ALJ to reevaluate the medical opinion evidence and to give "further consideration to the claimant's maximum [RFC] during the entire period at issue and provide [a] rationale with specific references to evidence of record in support of assessed limitations." AR 214. The Appeals Council further noted that, on remand, the ALJ may expand the record to obtain additional medical source evidence, clarification of the existing medical opinion evidence, and that the ALJ should obtain additional VE testimony clarifying the "effect of the assessed limitations on the claimant's occupational base." AR 214. The Appeals Council ordered the ALJ to ensure that the VE hypothetical "reflect[s] the specific capacity/limitations established by the record as a whole," to "identify and resolve any conflicts between the occupational evidence provided by the [VE] and information in the . . . DOT. . . and SSR 00-4p," and to "ask the [VE] to identify examples of appropriate jobs and state the incidence of such jobs in the national economy." AR 214.

On remand, the same ALJ (who authored the October 2021 decision) held another hearing in January 2023, and, on February 27, 2023, the ALJ again found that Plaintiff was not disabled during the closed period at issue from June 28, 2020, through the date of his advanced age change in August 2021. AR 17-30, 96-105.

## THE ALJ'S DECISION

In February 2023, the ALJ utilized the five-step disability evaluation process[1] and found as follows regarding the closed period from June 28, 2020, until August 19, 2021:

**Step one**: Plaintiff has not engaged in substantial gainful activity since June 28, 2020.

---

[1] 20 C.F.R. § 404.1520.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 3

      **Step two**: Plaintiff has the following severe impairments: cervical spine degenerative disc disease and degenerative disc disease; major depressive disorder; post-traumatic stress disorder ("PTSD"); and alcohol dependence.

      **Step three**: These impairments do not meet or equal the requirements of a listed impairment.[2]

      **Residual Functional Capacity**: Plaintiff can perform light work with additional postural, environmental, mental, and social limitations.

      **Step four**: Plaintiff cannot perform any of his past relevant work.

      **Step five**: As there were jobs that existed in significant numbers in the national economy that Plaintiff could perform from June 2020-August 2021, including mail room clerk, marking clerk, and photocopy machine operator, Plaintiff was not disabled during the relevant closed period.

AR 17-30.

The Appeals Council denied Plaintiff's request for review of the ALJ's February 2023 decision, making the ALJ's decision the Commissioner's final decision. AR 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. Dkt. 1.

## LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) *superseded on other grounds by* 20 C.F.R. § 416.920(a) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

---

[2] 20 C.F.R. Part 404, Subpart P., App. 1.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 4

1    Substantial evidence is "more than a mere scintilla.  It means - and means only - such
2    relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
3    *Biestek v. Berryhill*, 587 U.S. --, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *Magallanes v.*
4    *Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for evaluating symptom
5    testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that
6    might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is
7    required to examine the record as a whole, it may neither reweigh the evidence nor substitute its
8    judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).
9    When the evidence is susceptible to more than one rational interpretation, it is the
10   Commissioner's conclusion that must be upheld.  *Id.*

## DISCUSSION

12   Plaintiff argues the ALJ misevaluated his testimony and the medical opinion evidence.
13   Dkt. 10.  The Commissioner argues the ALJ's decision is free of harmful legal error, supported
14   by substantial evidence, and should be affirmed.  Dkt. 13.

### A.    The ALJ Erred in Evaluating the Medical Opinion Evidence.

16   Under regulations applicable to this case, the ALJ is required to articulate the
17   persuasiveness of each medical opinion, specifically with respect to whether the opinions are
18   supported and consistent with the record.  *See* 20 C.F.R. § 404.1520c(a)-(c).  An ALJ's
19   consistency and supportability findings must be supported by substantial evidence.  *See Woods v.*
20   *Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

#### 1.    Treating Physician, Dr. Ilya Golovaty

22   In August 2021, Plaintiff's treating physician, Dr. Golovaty, prepared a medical opinion
23   in which he opined that Plaintiff was capable of light work but that due to Plaintiff's "inability to

maintain exertional upper extremity and lower extremity demands," Plaintiff would on average miss three days of work per month.  AR 1823.  The ALJ found Dr. Golovaty's opinion "partially persuasive," agreeing with and adopting a limitation to light work, but rejecting Dr. Golovaty's opinion regarding Plaintiff's "level of absenteeism."  AR 27.  In support, the ALJ found that Dr. Golovaty's absenteeism restriction was inconsistent "with any evidence of the record."  AR 27.  Specifically, the ALJ pointed to Plaintiff's "ability to perform his activities of daily living independently" and his "caregiving to his elderly in-laws."  AR 27.

Plaintiff argues that the ALJ's reference to "any evidence of the record" was unduly vague, and the Court agrees.  See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."); see also Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence).  However, in accordance with Kaufmann v. Kijakazi, the Court has reviewed "the ALJ's full explanation" for rejecting Dr. Golovaty's opinion, "scrutiniz[ing] all of the pages of [the] ALJ's decision."  32 F.4th 843, 851 (9th Cir. 2022).  Notwithstanding, the ALJ's reference to "*any* evidence of the record" as support for rejecting Dr. Golovaty's absenteeism opinion remains too broad to be meaningful.  AR 27.  Neither Kaufmann nor any other Ninth Circuit precedent permit the Court to manufacture *post hoc* findings or support for such findings where none exists.  See Makenzie M. v. Comm'r of Soc. Sec., No. C22-5013-BAT, 2022 WL 2817086, at *1 (W.D. Wash. July 19, 2022) (rejecting similar argument regarding Kaufmann, and citing Bray v. Comm'r of Social Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009)) (court reviews ALJ's decision "based on the reasoning and

ORDER REVERSING THE COMMISSIONER'S
DECISION - 6

factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking").

The Court thus turns to the additional reasons proffered by the ALJ for rejecting Dr. Golovaty's opined absenteeism limitation: Plaintiff's ADLs and his caregiving for elderly in-laws. AR 27. Plaintiff contends the ALJ erred in finding that he was in fact caring for his in-laws, arguing the record shows instead that he was barely caring for himself during the relevant period. Dkt. 14 at 6-7. Plaintiff further notes that the ALJ failed to explain what type of care Plaintiff was providing, and how any such care, in turn, undermined Dr. Golovaty's opinion regarding his absenteeism. Dkt. 10 at 15-16. In terms of his ADLs, Plaintiff notes his testimony that he was unable to type, drive, cook, and/or lift anything heavy – all chores that his wife typically performed, in addition to doing Plaintiff's laundry and grocery shopping for him. Dkt. 10 at 11 (citing AR 66-72). The Commissioner counters with additional record evidence that she contends supports the ALJ's findings. Dkt. 13 at 8.

The ALJ did not provide any record citations in support of his findings regarding Plaintiff's ADLs and caregiving as they pertained to Dr. Golovaty's opinion. AR 27. Thus, in accordance with *Kaufmann,* 32 F.4th at 851, the Court has again reviewed the reasons and supporting record evidence cited by the ALJ elsewhere in his decision. *See, e.g.,* AR 21 (ALJ's step two analysis, citing AR 1003, 1263, 1388, 1540, and 1683, in support of Plaintiff's ability to perform his ADLs independently, and citing AR 1247, 1288, 1295-96, and 1345, in support of Plaintiff's alleged caregiving); *see also* AR 24 (ALJ's evaluation of Plaintiff's testimony). The ALJ cites July 2021 therapy records from Plaintiff's and his wife's couples counseling session. AR 21 (citing "C7F/111," AR 1247). However, the ALJ misinterprets references from within those records regarding Plaintiff's *wife's* care for her parents (Plaintiff's elderly in-laws),

incorrectly assuming that Plaintiff provided the care himself.  AR 21 (citing AR 1247) (therapist notes that Plaintiff and his wife had separated "due to recent events associated with [Plaintiff's] drinking and caregiving for his wife's elderly parents" and that Plaintiff's "wife [was] currently living with her son and parents in Southern [California]"); *see also* AR 77 (Plaintiff's testimony in September 2021, that his in-laws lived in California, and that his wife periodically "goes down there" to check in on them).  Moreover, the additional medical records cited by the ALJ regarding Plaintiff's alleged caregiving also do not undermine Dr. Golovaty's opinion regarding absenteeism, reflecting only that Plaintiff's general "goal[s]" at the time were to "work[] on his relationship with his wife," and "deal[] with elderly parents," and that Plaintiff felt stressed, in part, due to unspecified "caregiving responsibilities."[3]  AR 21 (citing AR 1247, 1288, 1295-96, 1345).

      Second, the ALJ's cited record evidence regarding Plaintiff's ADLs does not demonstrate a level of "independence" that undermines Dr. Golovaty's opinion regarding Plaintiff's absenteeism.  AR 27; *see also* AR 21 (citing AR 1003, 1263, 1388, 1540, and 1683).  Again, the evidence cited by the ALJ suggests that while Plaintiff was able to take care of his daily "grooming," "toileting," and "personal hygiene" needs, it was Plaintiff's wife who completed all of the "housework," including "cleaning, cooking, dishwashing, vacuuming, sweeping, and laundry."  *See* AR 21 (citing AR 1003).  Moreover, even if Plaintiff's ADLs were as stated by the ALJ, they nevertheless failed to provide substantial support for rejecting Dr. Golovaty's opined limitation.  "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract

---

[3] The Court declines to consider the additional evidence and/or reasons proffered by the Commissioner in her opposition brief that were not in fact advanced by the ALJ.  *See* Dkt. 13 at 7-8.  The Court is required to review the ALJ's decision "based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations." *Bray*, 554 F.3d at 1225-26.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 8

from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citations omitted); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted) ("disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). "One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan*, 260 F.3d at 1050 (citations omitted).

Accordingly, the ALJ erred in rejecting Dr. Golovaty's opinion regarding Plaintiff's likely absenteeism. The error was not harmless given the VE's testimony that such a limitation would have rendered Plaintiff unable to sustain full-time, competitive employment. *See* AR 90-91.

### 2. December 2020 and April 2021 Opinions from Non-Examining Physicians, Drs. Norman Staley and Christine Harmon

In December 2020 and April 2021, on initial review and reconsideration, respectively, consulting non-examining state agency physicians, Drs. Staley and Harmon, opined that Plaintiff was capable of light work with some additional limitations. AR 164-67, 138-41. At issue on appeal here are Drs. Staley's and Harmon's opinions regarding Plaintiff's manipulative limitations. Dkt. 10 at 1, 3-11. Both physicians opined that Plaintiff was limited to occasional handling, fingering, and feeling with both of his hands due to a loss of sensation and feeling in them, but especially in his right hand. AR 165-66, 139, 141.

In the ALJ's prior October 2021 decision, the same ALJ found Drs. Staley's and Harmon's opinions persuasive. AR 199. However, the ALJ declined to account for their opined manipulative limitations in Plaintiff's RFC, and, as noted above, the Appeals Council reversed and remanded based largely on this very discrepancy. AR 213.

On remand at the January 2023 hearing, the ALJ confirmed with the VE that an RFC specifying an occasional handling and fingering limitation would render Plaintiff disabled for the

closed period at issue, given Plaintiff's advanced age. AR 103-05. In his February 2023 decision, the ALJ subsequently downgraded his evaluation of Drs. Staley's and Harmon's opinions from "persuasive" to "somewhat persuasive," and rejected their opined manipulative limitations as "not consistent with [Plaintiff's] grip strength." AR 25; *cf.* AR 199. The ALJ then assessed Plaintiff with an RFC that permitted frequent, but not constant, handling, fingering, and feeling bilaterally. AR 22.

Plaintiff argues the ALJ mischaracterized the record evidence that he cited in support of his rejection of Drs. Staley's and Harmon's opined manipulative limitations, and that the ALJ also improperly substituted his interpretation of medical examination findings for those of the physicians.[4] Dkt. 10 at 5-7. Plaintiff contends that the pain and lack of sensation in his hands was supported by specific evidence in the medical record, and that his grip strength was distinct from his symptoms of pain and numbness. Dkt. 10 at 8-10. Accordingly, Plaintiff argues the ALJ erred in relying solely on his grip strength in rejecting Drs. Harmon's and Staley's related opinions. Dkt. 10 at 8-10.

The Commissioner does not dispute that hand pain and lack of sensation are symptoms distinct from grip strength. Dkt. 13 at 6. Instead, the Commissioner argues that, under *Kaufmann*, the Court should again look elsewhere within the ALJ's decision for support for the ALJ's rejection of Drs. Harmon's and Staley's opinions regarding Plaintiff's manipulative limitations. Dkt. 13 at 6 (citing 32 F.4th at 851). In particular, the Commissioner notes that the ALJ previously found that Plaintiff's sensation was "intact" in rejecting Plaintiff's testimony.

---

[4] In support of the argument that the ALJ improperly substituted his own interpretation of Plaintiff's medical findings, Plaintiff points out that at the prior October 2021 hearing, the ALJ declined to include a manipulative limitation in his VE hypothetical, and, in support, speculated on the record that if a claimant were limited to occasional handling, then the claimant's "grip obviously is [also] extremely limited." AR 90.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 10

Dkt. 13 at 6 (citing AR 24, which, in turn, cites AR 2099, 2114). The Commissioner further argues that Plaintiff's challenge to the ALJ's evaluation of Drs. Staley's and Harmon's opinions fails because Plaintiff has simply offered an alternative interpretation of the record evidence. Dkt. 13 at 7.

Here, Drs. Staley and Harmon relied on Plaintiff's lack of sensation, as opposed to his grip strength, in support of their opined manipulative limitations. AR 139, 141, 165-66. The ALJ's reliance on Dr. Wingfield's November 2020 examination finding regarding Plaintiff's grip strength in rejecting Drs. Staley's and Harmon's opined limitations was off target for several reasons. AR 25 (citing AR 1006, Dr. Wingfield's examination finding that Plaintiff possessed "5/5" grip strength). First, it ignored entirely the more pertinent observations from Dr. Wingfield's very examination regarding Plaintiff's lack of sensation. *See* AR 25. In particular, Dr. Wingfield observed upon neurological examination that Plaintiff had "no sensation to deep and light touch at the first, second, and third fingers on both hands," and subsequently opined that Plaintiff was limited in his handling and fingering due to this lack sensation and numbness. AR 1006-07. Thus, Dr. Wingfield's examination suggested that Plaintiff could possess intact grip strength while, simultaneously, experiencing numbness and a lack of sensation in his hands. AR 1005-06. Furthermore, contrary to the ALJ's finding otherwise, Dr. Wingfield's examination results and opinion regarding Plaintiff's numbness mirrored – rather than undermined – Drs. Harmon's and Staley's own opinions regarding manipulative limitations.[5] *See* AR 166 (Dr. Harmon opines that Plaintiff's "[h]andl[ing]/fingering/feeling [is] limited to

---

[5] The ALJ's reliance on Dr. Wingfield's examination as the sole reason for rejecting Drs. Harmon's and Staley's opined manipulative limitations is also notable in that it ignores the ALJ's subsequent rejection of Dr. Wingfield's own opinion as "not persuasive." *See* AR 25.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 11

occasional on both hands due to decreased feeling/sensation"); AR 141 (Dr. Staley makes identical finding).

Moreover, having again "scrutinized all of the pages of [the] ALJ's decision," the ALJ's findings elsewhere in his decision regarding Plaintiff's intact sensation and use of his upper extremities, fail to provide substantial evidence in support of the ALJ's rejection of Drs. Harmon's and Staley's opinions regarding Plaintiff's manipulative limitations.[6] *See Kaufmann*, 32 F.4th at 851; *see also* AR 21 (ALJ's step two findings regarding Plaintiff's upper extremities and supporting citations to AR 1005, 1108, 1247, 1263, 1288, 1295-96, 1376, 1625, 1665, and 1683); AR 24 (citing AR 2099 and 2114, in finding Plaintiff's sensation was "intact"); AR 25 (citing AR 1005). In support of his finding that Plaintiff's sensation was "intact," the ALJ cherry-picked two notations from Plaintiff's treatment for alcohol withdrawal and rehabilitation from December 2021 and February 2022, both of which post-dated the relevant, closed period in this case (June 28, 2020, through August 19, 2021) and likewise failed to undermine Drs. Harmon's and Staley's opinions.[7] AR 24 (citing AR 2099, 2114); *see* Dkt. 14 at 4-5. Moreover, as Plaintiff notes, numerous medical records in fact supported Drs. Staley's and Harmon's opinions regarding Plaintiff's sensation and numbness, including an MRI and follow-up examination that showed "chronic [bilateral upper extremity] pain and hand numbness,"

---

[6] Again, the Commissioner provides additional *post hoc* reasons and record citations not offered by the ALJ, which the Court may not consider. *See Bray*, 554 F.3d at 1225-26; *see* Dkt. 13 at 6-7.

[7] In February 2022, Plaintiff was undergoing occupational therapy while in the hospital for alcohol withdrawal. AR 2099. The occupational therapist observed "intact light touch as evidenced by gross assessment," along with some difficulty fastening buttons and "reduced strength, balance, endurance, and executive functioning." AR 2099. In December 2021, Plaintiff was seen by a physician for "chronic progressive bilateral tingling pain." AR 2114. The physician noted during an examination that Plaintiff had "intact sensation," yet diagnosed "ulnar neuropathy at the left elbow," and suggested that Plaintiff's complaints of extremity numbness, tingling, and pain appeared "consistent with an inflammatory polyarthralgia" and suggested "further workup to rule out reversible causes of peripheral polyneuropathy." AR 2114-15.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 12

Plaintiff's participation in a pain treatment program, Plaintiff's consultation with a hand therapist, and records from his treating physician, Dr. Golovaty. *See* Dkt. 10 at 14-16; *see also* AR 1675, 1802, 1672, 1219, 1988, 1939-42. The ALJ, however, failed to address any of those records, and thus impermissibly cited only to portions of the record consistent with his conclusion. *See* AR 25. In doing so, the ALJ also ignored evidence that Plaintiff's hand pain and numbness waxed and waned over time. *See Schiaffino v. Saul*, 799 F. App'x 473, 475 (9th Cir. 2020) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)) (noting that "the fact that 'symptoms wax and wane in the course of treatment' is to be expected," and "does not create an inconsistency" sufficient to reject medical opinion evidence).

The ALJ's evaluation of Dr. Harmon's and Staley's opinion regarding manipulative limitations was not supported by substantial evidence. Because the error infected the ALJ's RFC assessment and his findings at step five, it was not harmless. *See* AR 103-05.

**B.     The ALJ Did Not Err in Evaluating Plaintiff's Testimony Regarding Hand Pain and Numbness.**

Plaintiff's challenge is limited to the ALJ's rejection of his testimony regarding his hand pain and numbness.[8] Dkt. 10 at 1-2, 11-14.

Plaintiff testified regarding his hand pain and numbness in an April 2021 function report and at the September 2021 hearing. AR 478-84 (2021 function report); AR 63-78. Plaintiff attested that, during the closed period, he was unable use his hands for housework, yardwork, exercise, or to play sports because they were numb, unsteady, and lacked coordination. AR 478-79, 482. He testified that the pain and numbness in his hands and fingers was the greatest

---

[8] The Commissioner also addresses the ALJ's evaluation of Plaintiff's testimony regarding his mental impairments and Plaintiff's other physical impairments. Dkt. 13 at 2-4. The Court, however, limits its consideration to the testimony challenged by Plaintiff.

physical barrier to his working.  AR 65-67.  Plaintiff estimated his pain to be approximately 9-10 on a scale of one to ten.  AR 70.

In the February 2023 decision currently at issue, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that his "statements concerning the intensity, persistence, and limiting effects of the[] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record," and no affirmative evidence of malingering.  AR 23-24.  Accordingly, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)); *accord Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (confirming that the "clear and convincing" standard continues to apply).

The ALJ provided two reasons for rejecting Plaintiff's testimony pertinent to his hand pain and numbness, including:  (1) inconsistency with the evidence as a whole; and (2) evidence regarding Plaintiff's inconsistent statements to medical providers concerning his alcohol use.  AR 23-24.  In support of the first reason, the ALJ cited several sub-reasons or findings that the Court has already addressed above in conjunction with the ALJ's evaluation of the challenged medical opinion evidence.  Those included findings that Plaintiff's grip strength, muscle strength, and sensation were intact, and that his care for elderly in-laws undermined his testimony.  AR 24.  Additionally, the ALJ also found that "despite his physical impairments, [Plaintiff] did not allege physical impairments in his function report."  AR 24 (citing AR 438).

The ALJ, however, overlooked Plaintiff's April 2021 function report in conjunction with his findings.  AR 478-84.  As discussed above, that function report indeed described Plaintiff's

ORDER REVERSING THE COMMISSIONER'S
DECISION - 14

physical impairments, including his hand issues, their symptoms, and associated limitations. *See* AR 478-84.  Additionally, for all of the reasons already stated above, the ALJ conflated medical observations regarding Plaintiff's grip strength with his hand pain and numbness.  Moreover, the ALJ failed to adequately explain how the select few treatment notes regarding Plaintiff's grip strength and sensation from Plaintiff's hospitalizations for alcohol withdrawal undermined his testimony and outweighed medical opinions and evidence to the contrary regarding his hand pain and numbness.  *See* AR 13 (citing AR 974, 1501, 1426).  Finally, again, the evidence cited by the ALJ does not show that Plaintiff cared for his elderly in-laws, let alone cared for them in a manner that would have undermined his testimony regarding his hand pain and numbness.  Thus, these were not clear and convincing reasons for rejecting Plaintiff's testimony as to his hand numbness and pain.

The ALJ, however, additionally cited to evidence that Plaintiff "minimized the frequency and severity of his alcohol use during the consultative medical evaluation and VA primary care consultation," thus "undermin[ing] the overall reliability of [Plaintiff's] allegations."  AR 24 (citing AR 870-71, 1003, 1014, 1017, 1075, 2005, 1201, 1488-90, 1663, 1769, 1796).  In the evidence cited by the ALJ, Plaintiff acknowledged to medical providers and addiction counselors that his "constant recurrence of drinking" was his "biggest problem," and that he has engaged in binge drinking, which itself resulted in multiple hospitalizations over the years.  AR 1588-90, 1663.  Plaintiff explained that he does "not even really enjoy drinking, . . . it's just the numbing effect."  AR 1590; *see also* AR 1769, 1796 (Plaintiff describes the relationship between his mental and physical impairments, service in the Gulf War, and his binge drinking).  However,

ORDER REVERSING THE COMMISSIONER'S
DECISION - 15

Case 3:23-cv-05655-SKV   Document 15   Filed 02/12/24   Page 16 of 19

Plaintiff also, at times, minimized his use of alcohol and even denied drinking in a consultative examination with Dr. Wingfield.[9] *See* AR 1003.

Plaintiff argues that the ALJ was not permitted to make general credibility findings based on his inconsistent statements regarding alcohol abuse under Social Security Ruling ("SSR") 16-3p. Dkt. 14 at 6 (citing SSR 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1119029 (March 2016)). The Commissioner, by contrast, contends that the ALJ was entitled to find that Plaintiff's lack of candor regarding his alcohol use impacted his description of his physical pain and other symptoms. Dkt. 13 at 4 (citing *Thomas*, 278 F.3d at 959).

The Ninth Circuit has held that, in "determin[ing] whether the claimant's testimony regarding the severity [his] symptoms is credible, the ALJ may consider . . . ordinary techniques of credibility evaluation," including a "claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284. The Ninth Circuit has also held that inconsistent statements concerning drug or alcohol use can constitute specific, clear, and convincing reasons for rejecting a claimant's testimony. *See Thomas*, 278 F.3d at 959 (holding that "[t]he ALJ gave specific, clear and convincing reasons for discounting [the claimant's] testimony," including that the claimant "had not been a reliable historian, presenting conflicting information about her drug and alcohol usage"). Like the claimant in *Thomas*, here, too, Plaintiff gave conflicting information about his alcohol use to Dr. Wingfield. *See* AR 1003. Accordingly, the Court

---

[9] Dr. Wingfield acknowledged that his own review of Plaintiff's medical records revealed that Plaintiff had failed to mention hospitalizations for "alcohol related delirium and withdrawal." AR 1003. Accordingly, Dr. Wingfield was aware of Plaintiff's alcohol use at the time he drafted his opinion.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 16

concludes that the ALJ provided a specific, clear, and convincing reason to discredit Plaintiff's symptom testimony regarding his hand pain and numbness.

### C.  Remedy

Plaintiff requests remand for an immediate award of benefits, arguing that the record is complete, two hearings have already been conducted, and that crediting the improperly rejected opinions from Drs. Golovaty, Staley, and Harmon requires a finding of disability. Dkt. 10 at 16-17 (citing AR 90-91). Plaintiff further contends that this case "presents a rare exception to the 'ordinary remand' rule," and that remand to give the ALJ yet another opportunity to revisit Plaintiff's RFC would "create an unfair 'heads we win; tails let's play again'" situation. Dkt. 10 at 17; Dkt. 14 at 8.

The Commissioner counters that remand for further administrative proceedings is the appropriate remedy, suggesting without elaboration or explanation that there are outstanding issues such that further proceedings would be useful. Dkt. 13 at 9. In reply, Plaintiff notes that the Commissioner failed to describe any "meaningful conflicts" that remain. Dkt. 14 at 8.

Before remanding a case for an award of benefits, three requirements must be met. First, the ALJ must have "'failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Garrison*, 759 F.3d at 1020). Second, the Court must conclude "'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" *Id*. In so doing, the Court considers the existence of "'outstanding issues'" that must be resolved before a disability determination can be made. *Id*. (quoting *Treichler*, 775 F.3d at 1105). Third, the Court must conclude that, "'if the improperly discredited evidence were credited as true, the

ALJ would be required to find the claimant disabled on remand.'" *Id.* (quoting *Garrison*, 759 F.3d at 1021).

Here, the Court concludes that the first and third requirements have been satisfied. For the reasons above, the Court has found that the ALJ failed in his February 2023 decision to provide substantial evidence in support of his rejection of the opinions of Drs. Golovaty, Staley, and Harmon regarding Plaintiff's likely absenteeism and Plaintiff's manipulative limitations. In doing so, the ALJ committed the very errors previously noted by the Appeals Council in its January 2022 order remanding the case, failing again to "resolve the discrepancy" between the medical opinions and Plaintiff's RFC, and, in many instances, failing to provide a sufficient "rationale with specific reference to evidence of record." *See* AR 213-14. The ALJ's declination on remand to request "additional evidence and/or further clarification" from the medical sources, as recognized by the Appeals Council, suggests that the ALJ determined that no further record development or clarification regarding the challenged opined limitations was warranted. *See* AR 213-14; *see also* AR 97-105 (ALJ notes at January 2023 hearing that he is "making an entirely new decision," according to the Appeals Council's remand order, and takes testimony from a new VE at the hearing). Furthermore, if Drs. Golovaty's, Staley's, and Harmon's opined limitations were credited as true, Plaintiff would be rendered disabled *if this was not a case involving drug or alcohol use* ("*DAA*"). *See* AR 90-91, 103-05 (VE's testimony).

However, while the record was fully developed regarding the particular limitations opined to by Drs. Golovaty, Staley, and Harmon, Plaintiff (and the Commissioner) overlook the fact that this is indeed a DAA case. As such, further inquiry and proceedings are necessary to determine the materiality of Plaintiff's alcohol dependence – an impairment the ALJ found to be

ORDER REVERSING THE COMMISSIONER'S
DECISION - 18

1  severe. AR 20; *see Parra v. Astrue*, 481 F.3d 742, 746-48 (9th Cir. 2007) (describing process

2  utilized in DAA cases).

3        Because this is a DAA case, even after Drs. Golovaty's, Staley's, and Harmon's opinions

4  are credited as true, the finding of disability following a "round one" sequential analysis does not

5  warrant an immediate award of benefits. *See Parra*, 481 F.3d at 746-48. Instead, the ALJ must

6  also engage in the "round two" DAA analysis, during which the ALJ considers the materiality of

7  Plaintiff's alcohol dependence. *See id.* Here, the necessity of a further "round two" analysis

8  thus constitutes an "outstanding" issue requiring further administrative proceedings. *See*

9  *Garrison*, 759 F.3d at 1020. The Court therefore remands to the ALJ to conduct the "round two"

10 proceedings required in this DAA case: a second application of the five-step sequential

11 evaluation process to determine whether Plaintiff's alcohol dependence is "material" to a finding

12 that he is disabled. *See Parra*, 481 F.3d at 746-48.

## CONCLUSION

14       For the reasons set forth above, the Commissioner's final decision is **REVERSED** and

15 this case is **REMANDED** for further administrative proceedings to determine the materiality of

16 Plaintiff's alcohol dependence under sentence four of 42 U.S.C. § 405(g).

17       Dated this 12th day of February, 2024.

S. KATE VAUGHAN
United States Magistrate Judge